

Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 3423 | DATE | 2/12/2001 |
| CASE TITLE | Anna Epelbaum vs. Chicago School Reform Bd etc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted on all claims, and plaintiff's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 13 2001 | |
| | Notified counsel by telephone. | | date docketed | 125 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNA EPELBAUM, ) | |
| ) | |
| Plaintiff, ) | No. 98 C 3423 |
| ) | |
| v. ) | |
| ) | Judge John W. Darrah |
| CHICAGO SCHOOL REFORM BOARD ) | |
| OF TRUSTEES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anna Epelbaum, commenced an action against defendant, the Chicago School Reform Board of Trustees (Board), alleging age, national origin, sex, and wage discrimination. Before this Court are cross-motions for summary and miscellaneous motions related to the motions for summary judgment.

Initially, the Court will address the miscellaneous motions that relate to the motions for summary judgment. Plaintiff has proceeded pro se requiring her pleadings be liberally construed. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Plaintiff's motions and responsive pleadings fail to contain any citation to case law or analysis of the facts of this case to such case law. The Court has carefully reviewed all the pleadings and addresses all the legally recognizable arguments adduced from plaintiff's pleadings.

Plaintiff filed a motion to dismiss defendant's motion for summary judgment, arguing that materials used as support for defendant's motion for summary judgment were not disclosed to plaintiff and the motion for summary judgment was not timely filed. Plaintiff filed a subsequent

motion to dismiss upon direction of the Court in an attempt to explain what materials were wrongfully used to support defendant's motion for summary judgment. The second motion identifies several affidavits that plaintiff does not agree with but does not contain any evidence that the materials were not provided to plaintiff. In addition, the defendant's motion for summary judgment was timely filed after defendant received an extension of time to file the motion. Accordingly, plaintiff's motions to dismiss defendant's motion for summary judgment are denied.[1]

Defendant filed a motion to strike the affidavits of Michael Kelly, Wayne Pickette, and the plaintiff that were included in the plaintiff's cross-motion for summary judgment. Affidavits made in support of or opposing a motion for summary judgment must be made from personal knowledge and set forth facts that would be admissible in evidence. Fed. R. Civ. Proc. 56(e). The motions to strike the affidavits are well taken and, to the extent that they contain inadmissible opinions, speculation, conclusions, irrelevant facts, or refer to maters already dismissed from this case, they are deemed stricken and will be disregarded. In addition, the Court will not consider any evidentiary materials that are not properly designated as supporting a particular material fact as required by Local Rule 56.1(3). See *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *Bradley v. Work*, 154 F.3d 704, 708-09 (7th Cir. 1998).

Defendant also filed a motion to strike plaintiff's cross-motion for summary judgment and statement of facts because a memorandum was not filed in support of the motion and the statement

---

[1] Plaintiff titles the motions as: "Motion to Dismiss with Prejudice the Last Motion of the Defendant" and "Motion to Dismiss the Pending Motion of the Defendant With Prejudice (second version)."

of facts is legally insufficient. In light of plaintiff's pro se representation, the Court denies defendant's motion to strike plaintiff's cross-motion for summary judgment and statement of facts and will address the motion and statement of facts to the extent that they comply with the appropriate federal and local rules, i.e., the Court will not consider statements of fact that do not contain references to the factual record as required by L.R. 56.1(3).

Summary judgment is proper if" the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

In August, 1991, the Illinois State Board of Education (ISBE) issued plaintiff a Type 29, Transitional Bilingual certificate with an endorsement in Russian. (Def.'s 56.1(a)(3) Statement ¶ 5). Type 29 certificates are temporary teaching certificates that require a teacher complete the requirements for a standard teaching certificate within a maximum of eight years. (Id., at ¶ 5). Transitional Bilingual certificates certify the holder to teach students in bilingual classes, grades K-12, in the area of endorsement. (Id., at ¶ 7). Plaintiff's certificate expired in August, 1999. (Id., at ¶ 8). In July, 1993, the ISBE issued plaintiff a standard Type 09 certificate with an endorsement in Math. (Id., at ¶ 9). The Type 09 certificate certified plaintiff to teach grades 9-12 in the area of her endorsement, Math. (Id., at ¶ 10). Prior to plaintiff's Type 09 certification, she repeatedly contacted

3

the Board's Human Resources Department seeking assistance in acquiring a standard teaching certificate. The Human Resources Department advised plaintiff that certification issues were beyond the Board's jurisdiction and directed her to contact the ISBE. (Id., at ¶¶ 12-13). The Board also informed plaintiff that the selection of teachers is vested with the schools' principals and advised her of the appropriate procedures when plaintiff made inquires and requests for placement. (Id., at ¶¶ 49-50)

In January, 1994, plaintiff began working as a day-to day substitute teacher in the Chicago Public Schools. From March, 1997 through the fall of 1998, plaintiff worked at numerous high schools and elementary schools throughout the Chicago Public School system as a day-to-day substitute teacher. (Def.'s 56.1(a)(3) Statement ¶ 14, 41). During this time she did not have contact with the schools' principals. (Id., at ¶ 42). Beginning in 1994, plaintiff visited the Substitute Center and caused disturbances, which resulted in her being escorted from the building by Safety and Security personnel. (Def.'s 56.1(a)(3) Statement ¶ 24). During these visits to the Substitute Center, plaintiff yelled and was disagreeable and uncooperative. (Id., at ¶ 25). On a regular basis, plaintiff had arguments with students and administrators at the schools she worked as a substitute teacher. (Id., at ¶ 26). On one occasion, plaintiff was sent home by an assistant principal for wearing inappropriate attire; and, on another occasion, she was removed from Steinmetz High School by police escort. (Id., at ¶¶ 27-28).

To work as a substitute teacher, an ISBE substitute teacher certificate and registration with the Board's Substitute Center is required. The Substitute Center makes the daily assignments of substitute teachers in the Chicago Public Schools. (Id., at ¶ 18). Day-today-substitute teachers are not in a contractual continued service and can be assigned to work in any class at any school where

4

there is a temporary teacher absence, regardless of the subject area or grade level. (Id., at ¶ 19). The principals of individual schools may request that a particular substitute teacher not be assigned to their school. (Id., at ¶ 23). Approximately 20 principals or assistant principals requested that plaintiff not be assigned to their schools. (Id., at ¶ 29). Plaintiff's most recent substitute assignment card contained a "NO" notation for 11 schools, including "Senn". (Assignment Card No. 10). In June of 1998, the Assistant Principal of Senn Metropolitan Academy completed an evaluation of plaintiff for an employment and placement service. The evaluation indicated a rating of "Excellent" for all aspects of the evaluation, including professional traits. (Exh. 12, Plaint's Response).

In addition to day-to day substitutes, two types of cadre substitute teachers are hired. School cadre substitute teachers are selected by school principals, and regional or district cadre substitute teachers are selected by the Substitute Center. (Def.'s 56.1(a)(3) Statement ¶ 30). Regional cadre substitute teachers are appointed to help fill vacancies as received by the Substitute Center from schools in distinct sections of the City of Chicago. For example, a regional cadre may be assigned to Northside schools and will usually be assigned to schools within that section of the City. (Id., at ¶ 33). To be selected as a regional cadre assigned to one of the six Educational Regional Offices, a teacher must be registered with the Substitute Center, have a college degree in either elementary or high school education, and have a good track record as a day-to-day substitute teacher. (Id., at ¶ 31). Day-to-day substitute teachers who have a significant number of "NO's" on their assignment cards, which indicate requests by schools that the teacher not be reassigned to work at a particular school, and who may be difficult to work with, are not selected as regional cadre substitute teachers by the Substitute Center. (Id., at ¶ 34). Only a principal can select school cadre substitute teachers. (Id., at ¶ 37). The school cadre positions are effective for one year, subject to annual reappointment

5

by the school principal at the beginning of each school year. (Id., at ¶ 38). The Board limits the number of cadre substitute teachers a principal can select each year. (Id., at ¶ 39). Selection as a school cadre substitute teacher is only an option after a teacher has taught at the school in some capacity, thereby providing the school principal an opportunity to observe and assess his or her job performance. (Id., at ¶ 40).

Pursuant to the School Reform Act of 1988, the selection of all employees at a particular school resides with the school principal. All persons interested in employment with the Board must first be selected by a school principal, who then submits his or her selection to the Board for approval. (Def.'s 56.1(a)(3) Statement ¶ 46). The Board retains the exclusive authority to employ, hire, and fire employees. (Id., at ¶ 47).

Plaintiff asked assistant principals why she was not being hired as a cadre substitute teacher, and they responded that she was not chosen because they did not know her professionally and were selecting cadres from the district cadre list. (Def.'s 56.1(a)(3) Statement ¶¶ 56-57). Plaintiff applied for a position teaching computer science at John School but was not hired. She does not believe that she was not hired for a discriminatory reason; instead, she was not hired because computer science degree is not her "best degree." (Id., at ¶ 59; Plaint.'s July, 7, 1999 Dep. p. 44). At least four other schools interviewed plaintiff but did not offer her a position. (Def.'s 56.1(a)(3) Statement ¶ 98; Plaint.'s Response ¶ 59). Plaintiff does not believe that any school principal discriminated against her. (Def.'s 56.1(a)(3) Statement ¶ 55; Plaint.'s Dep. p. 148).

Plaintiff believes that she applied for employment at all Public Schools because she submitted resumes at job fairs and was included in employment databases with the Human Resources Department. (Def.'s 56.1(a0(3) Statement ¶ 61). The Human Resources Department

6

employment databases are available to all school principals seeking to fill vacancies. (Id., at ¶ 62). However, principals are not required to review the databases before making interview and hiring decisions. (Id., at ¶ 64). Some school principals do not refer to the employment database because they receive numerous resumes for each teaching vacancy. (Id., at ¶¶ 77, 83). To ensure consideration for employment, applicants must submit their resumes directly to school principals. (Id., at ¶ 65). To be included in the employment databases, applicants are required to register with the Human Resources Department by completing a database card. (Id., at ¶ 66). Plaintiff was included in the employment database for at least 1997. (Id., at ¶ 63). Individuals that are in the employment database are notified that they are in the database through a Notice of Inclusion. The Notice of Inclusion does not indicate they are qualified for any position or guarantee that they will receive an interview or be hired. (Id., at ¶¶ 67-68). Plaintiff was contacted for three interviews as a result of principals learning of her interest through the employment databases. (Id., at ¶ 99

The Chicago Public Schools also conduct job fairs which are open to the public. (Def.'s 56.1(a)(3) Statement ¶ 70). Notices of the job fairs due not guarantee attendees that they will be interviewed or hired. Principals do not conduct interviews at the job fairs. (Id., at ¶¶ 71-71).

In July, 1997, a clerk at Curie High School inadvertently failed to completely report plaintiff's time to the Payroll Department. When the error was discovered, Corrected Attendance Reports were sent to the Payroll Department to ensure that plaintiff was correctly paid for the time she worked. (Def.'s 56.1(a)(3) Statement ¶ 100). The payroll records indicate that plaintiff was not paid for a total of 37.5 hours. (Id., at ¶¶ 101-02). The payroll Record Summary Adjustment indicates that on August 12, 1997, a clerk adjusted plaintiff's pay for 41.5 hours to compensate her for the errors in her pay. (Id., at ¶ 103). The same Record Summary Adjustment indicates that on

7

August 13, 1997, a different clerk adjusted plaintiff's pay by 37.5 hours upon the receipt of the Corrected Attendance Reports. (Id., at ¶ 105). On August 18, 1997, the Payroll Department discovered the overpayment error and entered into the computer a negative salary adjustment to recoup the erroneous payment in the amount of $614.26. This amount reflects the difference between the amount plaintiff had been owed as reflected in the corrected attendance reports (37.5 hours) and the amount she received on August 15, 1997. (Id., at ¶ 107). The adjustment to plaintiff's salary was not made until February, 6, 1998, because that was the first time her pay exceeded the amount of the negative salary adjustment. (Id., at ¶ 108).

In August, 1997, plaintiff filed a wage claim with the Illinois Department of Labor against Curie High School alleging she was owed $266.46 for work she performed at Curie High School during the summer of 1997. (Id., at ¶ 111). Curie High School responded to the Department of Labor advising it that plaintiff had actually been overpaid in error and refused to make any additional payments. In April, 1998, plaintiff received notice from the Department of Labor that it attempted to collect the wages due plaintiff but had been unsuccessful. (Plaint.'s Response ¶ 113 and Exh). In March, 1998, the Chicago Teacher's Union filed a grievance on plaintiff's behalf concerning the deduction of $518.00 from her wages in February, 1998. (Def.'s 56.1(a)(3) Statement ¶ 115). The grievance was denied because the adjustment was made to recoup an overpayment that had been paid and not returned. (Id., at ¶ 116). Plaintiff's appeal of the denial of the grievance was also denied. (Id., at ¶ 117). In the fall of 1998, plaintiff ended her employment with the Board upon her own initiative. (Id., at ¶ 120).

Plaintiff alleges that she was discriminated against on the basis of her age, national origin,

and sex based on her not being hired in the Chicago Public School system and a dispute in her pay.[2]

Title VII makes it unlawful for an employer to fail or refuse to hire an individual, or otherwise discriminate against an individual with respect to her compensation, based on that person's sex or national origin. 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination in Employment Act (ADEA) makes it unlawful to "discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). A plaintiff may prove discrimination through either direct or circumstantial evidence or the indirect burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999) (*Jackson*). Direct evidence is defined as "evidence 'which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption.'" *Plair v. E.J. Brach & Sons*, 105 F.3d 343, 347 (7th Cir. 1997) (citation omitted). In an employment discrimination case, direct evidence must speak directly to the issue of discriminatory intent, and it must relate to the specific employment decision in question. *Cowen v. Glenbrook Security Serv., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997). Plaintiff has not presented any direct evidence of discrimination, and her motion for summary judgment argues disparate treatment; thus, the focus is

---

[2]The Court has previously ruled that any claims arising from conduct before January 20, 1998, are time barred because they fall outside the 300-day period prior to the filing of her charge. *Epelbaum v. Chicago Board of Education*, No. 98 C. 3423, 1999 WL 89754 (Feb. 9, 1999). Therefore, numerous arguments made by plaintiff for conduct outside this time period are not considered by the Court and cannot be used as a basis to deny summary judgment. However, while plaintiff's wage dispute is based on work conducted in 1997, the dispute continued into 1998, and plaintiff alleges the dispute illustrates the Board's discriminatory motivation. Therefore, because the dispute continued into the applicable time period, the Court will consider the wage dispute in evaluating the motions for summary judgment.

on the *McDonnell Douglas* burden-shifting method. See *Credo v. Zema Systems Corp.*, 944 F.Supp. 677, 682 (N.D.Ill. 1996) (Title VII and ADEA claims are analyzed according to *McDonnell Douglas*).

Under the *McDonnell Douglas* burden-shifting test, the plaintiff must first establish a prima facie case by the preponderance of the evidence. *Jackson*, 176 F.3d at 982. If the plaintiff establishes a prima facie case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate, again, by a preponderance of the evidence, that reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998) (*Adreani*).

A. National Origin and Sex Discrimination

To establish a prima facie case of national origin or sex discrimination, plaintiff must establish that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) after her rejection, the position remained open, and the employer continued to seek applicants from persons of plaintiff's qualifications. *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1259 (7th Cir. 1990) quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Plaintiff has established that she is a member of a protected class and that she applied for at least five positions within the Chicago School District. However, she has failed to establish that she was qualified for the positions for which she applied. Plaintiff had a history of problems while a substitute teacher with both students and administration in several schools and also had problems

at the Substitute Center. In addition, some of the positions she applied for included computer science, in which the plaintiff is not certified to teach. Furthermore, she admitted in her deposition that she understood why she was not hired to teach computer science and that she did not believe that any school principals discriminated against her.

Plaintiff argues that she was certified to teach Math and had a bilingual certification. Therefore, she was qualified, and the Board should have done more to secure her a position. However, certification and endorsements are only threshold requirements, and the school principal determines what candidates to interview and eventually send to the Board for approval. The term qualified encompasses other qualities, such as demonstrated expertise in a relevant subject matter, background and work experience in the subject area of the vacancy, certification or endorsement in multiple areas, efficient allocation of educational resources, demonstrated maturity, the applicant's teaching philosophy, and previous work experience that demonstrates a variety of skills that can benefit students. As set out above, plaintiff did receive a positive recommendation from an assistant principal from Senn Academy; however, she has not established that she applied for a position at that school in 1997 or 1998.

Plaintiff also failed to establish that, after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications.

Even if plaintiff was able to establish a prima facie case, she has failed to establish that the Board's reasons for not hiring plaintiff were a pretext to national origin or sex discrimination. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (*Debs*). Pretext in this context does not mean a mistake;

11

rather, it means "a lie, specifically a phony reason for some action." *Russel v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

Plaintiff was not interviewed at all schools that had openings because some principals conducted interviews based only on the resumes they directly received from applicants, and plaintiff did not send a resume to every school. Plaintiff has failed to establish that the refusal to hire plaintiff because other candidates were better qualified was a pretext to discrimination. Plaintiff admits that no principals discriminated against her, and it was the principal's choice as to who to interview and who to recommend to the Board to be hired. In addition, plaintiff failed to present any evidence that the individuals hired for the positions that she applied for were as qualified or less qualified than plaintiff.

B. Age Discrimination

To succeed on a claim under the ADEA, plaintiff must show that her age was a determining factor in the employer's decision not to hire her. See *Adreani*, 154 F.3d at 393.

Plaintiff must establish by the preponderance of the evidence (*Jackson*, 176 F.3d at 982) that: (1) she was in a protected class (40 years of age or older (29 U.S.C. § 631(a)); (2) she performed her job duties such that she was meeting her employer's legitimate expectations or was qualified for the job for which she applied; (3) despite her performance, she was discharged or not hired; and (4) similarly situated younger employees were treated more favorably (*Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir. 1995)).

Plaintiff has established that she is a member of a protected class and that she was not hired

for the positions she applied. However, as stated above, she has failed to establish that she was qualified for the positions for which applied. In addition, she has presented no evidence that similarly situated younger applicants were treated more favorably. Furthermore, as found above, plaintiff has failed to establish that the reasons plaintiff was not hired were a pretext to age discrimination.

C. Wage Discrimination

To establish a prima facie case for wage discrimination, plaintiff must prove that she was paid less than a similarly situated employee who was not a member of plaintiff's protected class. See *Johnson v. University of Wisconsin*, 70 F.3d 469, 478 (7th Cir. 1995). Plaintiff argues her claim with the National Labor Board evinces discrimination against her. Plaintiff does not dispute that she was overpaid during 1997 and that the Board was justified in a return of the monies she was overpaid. However, she disagrees with the amount of the adjustment. Plaintiff has failed to establish that the amount of the overpayment returned to the Board was incorrect or that the amount she was being paid was less than a similarly situated employee who was not a member of a protected class. Accordingly, her claim fails.

Defendant's Motion for Summary is granted on all claims, and plaintiff's Motion for Summary Judgment is denied.

Dated: February 12, 2001

JOHN W. DARRAH
United States District Judge